American Lime & Stone Company, Appellant, *v.* The Public Service Commission.

Argued March 13, 1930.

Before TREXLER, P. J., KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.

*Sterling G. McNees,* for appellants, cited: J. K. Davison & Brother, Keystone Sand & Supply Co. v. Pennsylvania Railroad Company, 8 Pa. P. S. C. 658; Foxburg Silica Sand Company v. Pennsylvania Railroad Company et al., 17 P. C. R. 429; Fall Creek Sand & Stone Company v. B. R. & P. Railway Company, 17 P. C. R. 485.

*James E. Gowen,* for intervening appellees, cited: Baer Brothers v. D. & R. G. R. R., 233 U. S. 479; New York & Pennsylvania Co. v. N. Y. C. R. R., 267 Pa. 64; Greensburg Borough v. Public Service Commission, 268 Pa. 177.

*Daniel H. Kunkel,* Legal Assistant, and *John Fox Weiss,* Counsel, and *E. Everett Mather, Jr.,* Assistant Counsel, for The Public Service Commission, cited: Twells v. P. R. R. Co., 2 Walker 450; Borda v. Railroad Co., 141 Pa. 484; Skipper et al. v. Penna. R. R. Co., 47 Pa. 338.

OPINION BY GAWTHROP, J., May 6, 1930:

Tyrone Lime & Stone Co., one of appellants, filed a complaint with the Public Service Commission, alleging that the freight rates charged them by the

respondents for the transportation of sand, gravel and crushed stone from complainant's plants to destinations within the Commonwealth were not on a uniform basis, disregarded essential transportation characteristics, were higher than the rates charged on such commodities from other competitive shipping points to the same destinations, and were, therefore, unjust and unreasonable and in violation of section I (b), Article II of the Public Service Company Law, and unduly prejudicial against complainant, and unjustly preferential of its competitors, in violation of section 8, Article III of the law. American Lime & Stone Company, the other appellant, intervened in the proceeding as a complainant. Answers were filed by forty-four respondents. After hearing the commission filed a report and order, in which it found that the rates were not unreasonable prior to December 1, 1928, but that on and after that date they were, are, and for the future will be, unreasonable to the extent that they exceeded, exceed or may exceed, a distance scale of rates set up in the order, and directed the filing and publication of rates by respondents in accordance with said distance scale. From this order these two appeals were taken. They were argued together below and will be disposed of in a single opinion.

The record shows the following undisputed facts: Appellants are engaged in the production of sand and crushed stone at Stover and Union Furnace in the Tyrone district, which points are located on the lines of the Pennsylvania Railroad Company at distances respectively fifty-nine and sixty-five miles east of Johnstown. Their principal market is in the territory west and northwest of their plants, where they are in competition with producers of the same commodities. The plants of some of the appellants' competitors located at Johnstown and in the territory to the west and northwest thereof have the advantage of

freight rates based upon a mileage scale of rates similar to that prescribed in Davison & Bro. v. P. R. R., 8 Pa. P. S. C. 658, and known as the "Davison Scale," which is ten cents per ton lower than the rates fixed by the scale of rates prescribed in the order from which this appeal was taken. The scale of rates here under attack is the same as that prescribed in Lycoming Silica & Sand Co. v. S. & S. S. Ry. Co., 9 Pa. P. S. C., and known as the "Lycoming Scale." If the scale of rates fixed by the commission shall become effective these competitors of appellants will have the advantage of a differential of ten cents a ton on shipments of sand, gravel and crushed stone from their plants to destinations within two hundred miles of Pittsburgh. As the plants of appellants are about one hundred and thirty-five miles east of Pittsburgh, these competitors can ship their product eastwardly sixty-five miles beyond appellants' plants at the rate provided by the Davison Scale, while appellants in shipping westwardly over the same trackage will be required to pay under the "Lycoming Scale."

The only question raised by this appeal is whether there is substantial evidence in the record to support the finding of the commission that the new rate fixed by it is a just, due, equal and reasonable rate. The sale ground upon which appellants attack it is that it is in effect unjustly discriminatory against them and unduly preferential to their competitors, because the latter have the benefit of the Davison Scale of rates. Even though appellants suffer some disadvantage from this condition, it does not follow that there is an unlawful discrimination against them. The law does not prohibit all discrimination in charges, but only discrimination which is undue and unreasonable. The charging of different rates for service rendered upon different conditions and under different circumstances is not unlawful: Alpha Portland Cement Co.

v. .P. S. C., 84 Pa. P. S. C. 255. This well established principle has been adhered to by the Supreme Court of the United States in considering questions involving prejudice or discrimination arising under the Interstate Commerce Act. "Every rate which gives preference or advantage to certain persons, commodities, localities or traffic is discrimination; for such preference prevents absolute equality of treatment among all shippers or travellers, but discrimination is not necessarily unlawful. The Act to Regulate Commerce prohibits only that discrimination which is unreasonable or unjust ... ... . Whether a preference or discrimination is undue, unreasonable or unjust is ordinarily left to the commission for decision; and the determination is to be made, as a question of fact, on the matters proved in the particular case": Nashville C. & St. L. Ry. v. State of Tennessee, 262 U. S. 318. See also United States v. Illinois Central R. R., 263 U. S. 515.

The Interstate Commerce Commission has recognized the division of certain territory into zones known as Central Freight Association territory and Trunk Line territory. Central Freight Association territory is bounded on the east by an imaginary line running north and south through Pittsburgh and Erie. Trunk Line territory lies east of this imaginary line. It has generally been the rule that rates in the Central Freight Association territory are lower than rates on the same commodities in the Trunk Line territory, because transportation conditions are generally more favorable in the former than in the latter. In 1923 the Interstate Commerce Commission prescribed a different scale of rates for the moving of crushed stone in Central Freight Association territory: Pa. Sand & Gravel Producers Assn. v. B. & O. R. R. Co., 104 I. C. C. 717. This scale of rates was ten cents per ton lower than that which had been prescribed for appli-

cation in the Trunk Line territory. The result was that producers in the western part of Pennsylvania were at a disadvantage in competing with producers in Ohio who were shipping into Pennsylvania under the lower rates. Therefore, the Public Service Commission prescribed the Davison Scale of rates for shipments originating at certain points in the western part of the state, in Trunk Line territory, in order to put the Pennsylvania producers upon a competitive basis with the Ohio producers. In the present case the commission was confronted with the necessity of determining whether the Davison Scale should be extended eastwardly so that it would be effective in the territory in which appellants' plants are situated. That tribunal decided to adhere to its previous policy of limiting the application of the Davison Scale to points of production located in territory west of the Allegheny Mountains and refused to extend it further east. Although this action may result in some prejudice to appellants, we cannot say that it was unreasonable or arbitrary.

The allegation of unjust discrimination in the rates under attack is not based upon the assessment of different charges for the same line haul, but upon the fact that different charges will be assessed from points equidistant from a common market. There is no showing of discrimination between shippers of the same community. The points of origin in Pennsylvania from which the rates of the Davison Scale are now maintained are all in closer proximity to Central Freight Association territory than are the plants of appellants. There has been no difference in treatment under substantially similar circumstances and conditions such as would warrant a finding of undue prejudice. "The law is not an equalizer of fortunes, favors or opportunities": Interstate Commerce Commission v. Diffenbaugh, 222 U. S. 42.

It was necessary to draw a line somewhere to

divide the zone carrying the Davison Scale from the zone carrying the Lycoming Scale; otherwise there would be a complete disruption of the intrastate rate structure heretofore recognized and approved by the commission. The question, where the line shall be drawn, is largely of an administrative character which the commission is peculiarly qualified to decide.

After full consideration of the entire record we cannot say that the order of the commission fixing the rate now under attack is without support in the evidence. We may not substitute our own judgment for that of the commission upon a matter purely administrative, although the evidence might have warranted a further reduction in the rates.

The appeals are dismissed.